IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERTO VIERA,                          :

        Plaintiff,                   :          CIVIL NO. 1:10-CV-1717
                               :
    v.                                   :          Hon. John E. Jones III
                               :
SUPERINTENDENT WENEROWICZ,   :                     **FILED**
*et al.*,                                :          HARRISBURG, PA
                               :          AUG 1 5 2011
        Defendants.                  :
                                   MARY E. D'ANDREA, CLERK
                                   Per_____
**MEMORANDUM and ORDER**      Deputy Clerk

August *15*, 2011

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

       Plaintiff Roberto Viera ("Plaintiff" or "Viera"), an inmate presently confined at

the Frackville State Correctional Institution ("SCI Frackville") in Frackville,

Pennsylvania, initiated the above action *pro se* by filing a Complaint raising civil

rights claims under 42 U.S.C. § 1983 as well as state law tort claims for intentional

infliction of emotional distress and negligence. (Doc. 1.)  Named as Defendants are

the following current or former employees of SCI Frackville: Former Superintendent

Michael Wenerowicz; Corrections Officer Tait Long; Corrections Officer Kevin Bly;

Corrections Officer Robin Hopkins; and John and Jane Does, who are nurses on the

medical staff at SCI Frackville.

Presently before the Court is a Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) filed on behalf of Defendants Wenerowicz, Long, Bly, and Hopkins. (Doc. 11.)  Defendants argue that the claims against them in their official capacities should be dismissed as barred by the Eleventh Amendment; that the claims against Defendant Wenerowicz should be dismissed for lack of personal involvement; and that the state law tort claims against Defendants should be dismissed as barred by sovereign immunity.  For the reasons set forth herein, the Motion will be granted in part, and denied in part.

## I.   PROCEDURAL BACKGROUND

Viera initiated this action by filing his Complaint on August 18, 2010.  By Order dated August 30, 2010, we directed service of the Complaint on Defendants. (Doc. 8.)  On November 5, 2010, counsel entered a Notice of Appearance on behalf of Defendants Wenerowicz, Long, Bly, and Hopkins (Doc. 9) and also filed a Demand for a Trial by Jury on their behalf (Doc. 10).  On the same date, the instant Motion to Dismiss the Complaint was filed on behalf of Defendants Wenerowicz, Long, Bly, and Hopkins (Doc. 11.)  A supporting brief (Doc. 12) also was filed. Viera filed his opposition brief on November 22, 2010 (Doc. 13), and thus the Motion is fully briefed and ripe for disposition.

2

## II.    ALLEGATIONS OF COMPLAINT

At the outset of his Complaint, Viera alleges that Defendants deprived him of immediate access to medical care and treatment when he became seriously ill while at SCI Frackville as a result of his heart disease and medical condition.  (Doc. 1 at 1.) He alleges that Defendants' actions or lack thereof in depriving him of immediate access to medical attention resulted in his severe pain and suffering, including from sustaining a serious physical injury to his head, and his emergency hospitalization for treatment.  (*Id.* at 1-2.)  Viera makes the following factual allegations:

On August 9, 2009, at approximately 6:15 p.m., while he was housed on the B-block inmate housing unit at SCI Frackville, Viera became seriously ill in that he began experiencing severe hypertension and other mild heart attack related symptoms, including severe chest pains; numbness; vomiting; difficulty breathing; and severe dizziness, and thus he was in need of immediate medical care and treatment.  (*Id.* at 5 ¶ 12.)

Defendant Bly was on B-block temporarily relieving Defendant Hopkins, who was the regular officer assigned to work on B-block.  (*Id.* at 6 ¶ 17.)  Viera alerted Defendant Bly of the severity of his sickness, including that he suffers from high blood pressure and heart disease, and requested that Bly contact the medical

3

department because he needed medical treatment. (*Id.* ¶ 13.) Bly responded "sarcastically" to Viera "do you have a machine to check if your blood pressure is high." (*Id.* at 6 ¶ 14.) Viera responded in the negative, but continued to explain his severe symptoms and against stated that he needed immediate medical attention, and asked Bly to inform Defendant Long of his condition so that Long could notify the medical department. (*Id.* ¶ 15.) Bly responded that he would check and left Viera, but never returned, thus ignoring Viera's serious need for medical care and leaving him in his cell in severe pain and suffering. (*Id.* ¶ 16.)

At 6:40 p.m., which was approximately thirty (30) minutes after still not receiving any medical attention or concern from Defendants Long and Bly, Viera noticed that Defendant Hopkins had returned to the block. (*Id.* ¶ 18.) Viera therefore alerted Hopkins to his severe symptoms and that he had notified Bly, who apparently had ignored his request. (*Id.* ¶ 19.) He immediately pleaded with Hopkins to notify the medical department because he had been in severe pain and suffering for over thirty (30) minutes, but she responded "sarcastically" "the only way I can send you to medical, is if you are bleeding or dying." (*Id.* at 7 ¶¶ 20-21.)

Viera continued to express to Hopkins that he was in serious need of immediate medical attention and stated that, if she were to notify the medical department, they

4

would tell her that he suffers from severe high blood pressure and heart disease. (*Id.* ¶ 22.) Hopkins responded that nobody was available in medical, that Viera looked fine to her, and advised him to drink a glass of water. (*Id.* ¶ 23.) She subsequently said that she would let Defendant Long know about the situation, but that he "most likely" would not send Viera to medical. (*Id.* ¶ 23.)

Viera continued to suffer from severe chest pains, numbness, difficulty breathing, vomiting, and dizziness for over an hour, but was "blatantly ignored" even when he shouted out of his cell that he was in need of immediate medical treatment. (*Id.* ¶ 24.) Hopkins responded to Viera by telling him to "shut up" and threatening him with disciplinary actions. (*Id.* at 8 ¶ 25.)

A fellow inmate made some inquiries with Viera as to whether he was alright, and when Hopkins heard the exchange, she stated "sarcastically" "I thought you was dying, stop yelling out your cell, because you are not going to medical." (*Id.* ¶ 27.)

Viera's cell mate then began pleading with Hopkins to get Viera some medical attention because he was seriously ill, but his request was to no avail. (*Id.* ¶ 28.) Instead, Hopkins threatened Viera's cell mate with disciplinary action if he did not stop talking. (*Id.* ¶ 29.)

As of 8:15 p.m., approximately two (2) hours had passed without Viera

5

receiving any medical treatment. (*Id.* ¶ 30.) The time for evening "medication line"

arrived, which is when inmates who have been prescribed medications to be taken in

the evening proceed to the medical department to receive their evening dosages. (*Id.*

at 9 ¶ 31.) Viera had evening dosages of medications prescribed, and he therefore

asked Hopkins to open his cell so that he could go to the medical department. (*Id.* ¶

32.)

At this point, approximately two (2) and one-half (½) hours after he first

became ill, Long and Hopkins allowed Viera to go unescorted to the medical

department. (*Id.* ¶ 33.) While he was walking to the medical department, Viera lost

consciousness and passed out, falling head first to the concrete ground and sustaining

a severe injury to the frontal region of his head. (*Id.* ¶ 34.) He was taken

immediately to the emergency room of Saint Catherine Hospital in order to receive

stitches for his head injury and to be treated for his severe sickness that Defendants

had ignored. (*Id.* ¶ 35.)

Viera alleges that Defendants Long, Bly, and Hopkins acted with deliberate

indifference when they delayed and/or deprived him of immediate access to medical

care for his serious medical need. (*Id.* at 10 ¶ 36.) He further alleges that the John

and Jane Doe Defendants from the medical staff acted with deliberate indifference

when they failed to respond appropriately and in a professional manner toward Viera's serious need for immediate access to medical care, which resulted in Viera having to be hospitalized in a manner that could have been avoided but for their actions or omissions. (*Id.* ¶ 37.) He alleges that Defendants actions violated his rights under the Eighth and Fourteenth Amendments to the Constitution. (*Id.* ¶ 38.)

Viera asserts four causes of action. He alleges that Defendants' actions constituted deliberate indifference to his serious medical needs in violation of the Eighth and Fourteenth Amendments and cruel and unusual punishment in violation of the Eighth Amendment. (*Id.* at 11-14 § VII, Counts I, II.) He also asserts state law claims of intentional infliction of emotional distress and negligence. (*Id.* at 14-16, Counts III, IV.)

Viera specifies that he is suing each Defendant in his or her individual and official capacity and that, at all times mentioned in the Complaint, each Defendant acted under the color of state law. (*Id.* at 4 ¶ 11.) He requests compensatory and punitive damages as well as costs and attorney fees. (*Id.* at 16-17 § V.)

## III.    STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a

7

short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . .'" *Victaulic Co. v. Tieman,* 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Twombly,* 550 U.S. at 555). Accordingly, to satisfy the plausibility standard, the complaint must indicate that defendant's liability is more than "a sheer possibility." *Iqbal,* 129 S.Ct. at 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly,* 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later formalized in *Iqbal,* a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly,*

8

550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss. *Iqbal,* 129 S.Ct. at 1950. Next, the district court must identify "the 'nub' of the ... complaint-the well-pleaded, nonconclusory factual allegation[s]." *Id.* Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips,* 515 F.3d at 231 (citing *Twombly,* 127 S.Ct. 1964-65, 1969 n. 8). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## IV.   DISCUSSION

### A.   Official Capacity Claims

Viera states that he is bringing his claims against Defendants both in their official and individual capacities. (Doc. 1 at 5 ¶ 11.) In the instant Motion to Dismiss, Defendants argue that, to the extent Viera is suing them in their official capacities, his claims for monetary damages must be dismissed. (*See* Doc. 12, Defs.'

Br., at 3.)

Federal courts cannot consider suits by private parties against states and their agencies unless the state has consented to the filing of such a suit. *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 241 (1985), *superseded in other respects by* Civil Rights Remedies Equalization Amendment of 1986, 42 U.S.C. § 2000d-7; *Edelman v. Jordan,* 415 U.S. 651, 662 (1974). This immunity extends to suits asserting civil rights violations where the state is named as a defendant. *Laskaris v. Thornburgh,* 661 F.2d 23, 26 (3d Cir. 1981). "Under the Eleventh Amendment, a plaintiff other than the United States or a state may not sue a state in federal court without the latter state's consent unless Congress abrogates the state's Eleventh Amendment immunity pursuant to a constitutional provision granting Congress that power." *Chittister v. Dep't of Cmty. & Econ. Dev.,* 226 F.3d 223, 226 (3d Cir. 2000). The Commonwealth of Pennsylvania has not waived its rights under the Eleventh Amendment. "By statute Pennsylvania has specifically withheld consent [to be sued]." *Laskaris,* 661 F.2d at 25 (citing Pa. Cons. Stat. Ann. § 8521(b)). Section 1983 does not "abrogate the Eleventh Amendment immunity of the States." *Quern v. Jordan,* 440 U.S. 332, 345 (1979); *Galvani v. Pennsylvania,* Civil No. 1:08-CV-0393, 2008 WL 4821748, at *5 (M.D. Pa. Nov. 4, 2008) (Conner, J.).

10

Furthermore, an essential element of any claim under § 1983 is that the alleged wrongdoing was committed by a "person." 42 U.S.C. § 1983. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't. of State Police,* 491 U.S. 58, 71 (1989).

Based on the foregoing, we will dismiss Viera's claims against Defendants in their official capacities for monetary damages. *See Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990) (Eleventh Amendment bars suits for monetary damages by private parties in federal court against a state, state agencies, or state officials in their official capacities because the state is the real party in interest inasmuch as the plaintiff seeks recovery from the state treasury) (citations omitted).

In opposing the foregoing portion of the instant Motion, Viera states that, as a *pro se* litigant, he is limited in his ability and legal research to properly formulate an adequate objection to this argument advanced by Defendants, but asserts that, Defendants' request for dismissal of the claims against them in their official capacities does not preclude the suit from continuing against them in their individual capacities. (*See* Doc. 13, Pl.'s Opp'n Br., at 4.) Viera is correct in his observation that this action will proceed against Defendants in their individual capacities.

11

### B.   Claims Against Defendant Wenerowicz

Defendants argue that Viera's claims against Defendant Wenerowicz should be dismissed for lack of personal involvement because Viera states that he sues him pursuant to the *respondeat superior* doctrine and makes no specific allegations against him.  (*See* Doc. 12 at 3-4 (citing Doc. 1, Complaint, ¶ 4).)

In opposing the instant Motion, Viera acknowledges that he sought to pursue his claims against Defendant Wenerowicz solely under the *respondeat superior* doctrine, and therefore states that he does not object to his claims against Defendant Wenerowicz being dismissed.  (*See* Doc. 13 at 6.)  Indeed, civil rights claims cannot be premised on a theory of *respondeat superior*.  *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim.  *See Rizzo v. Goode,* 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials,* 546 F.2d 1077 (3d Cir. 1976).  Thus, where Viera has not alleged any personal involvement in the alleged wrongs by Defendant Wenerowicz, we must dismiss his claims against Defendant Wenerowicz and will direct the Clerk of Court to terminate Wenerowicz as a party to this action.

12

## C.   Sovereign Immunity

Defendants argue that Viera's state law tort claims against them for intentional infliction of emotional distress and negligence are barred by sovereign immunity. (*See* Doc. 12 at 4-6.)  The doctrine of sovereign immunity, which is codified at 1 Pa. Cons. Stat. Ann. § 2310, protects a state official from suit unless the cause of action falls within one of several statutory exceptions, which are set forth in 42 Pa. Cons. Stat. Ann. § 8522, or the individual's conduct falls outside the scope of the employee's employment.  *See Johnson v. Townsend*, 314 Fed. Appx. 436, 439 (3d Cir. 2008).  Section 2310 provides, in pertinent part, as follows: "Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity."  1 Pa. Cons. Stat. Ann. § 2310. Immunity only has been waived in nine narrow areas, which are defined in 42 Pa. Cons. Stat. Ann. § 8522(b)[1], none of which are applicable here.  Therefore, Viera's

---

[1] Section 8522 waives immunity in the following instances: (1) Vehicle liability; (2) Medical-professional liability; (3) Care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) Potholes and other dangerous conditions; (6) Care, custody or

(continued...)

state law claims against Defendants are barred unless any of the Defendants were acting outside the scope of their employment during the events alleged in Viera's Complaint.

Under Pennsylvania law, an action falls within the scope of employment if it: (1) is the kind that the employee is employed to perform; (2) occurs substantially within the job's authorized time and space limits; (3) is motivated at least in part by a desire to serve the employer; and (4) if force was used by the employee against another, the use of force is not unexpectable by the employer. Restatement (Second) of Agency § 228; *Brumfield v. Sanders*, 232 F.3d 376, 380 (3d Cir. 2000) (stating that Pennsylvania Supreme Court has adopted the Restatement's definition of "within the scope of employment").

In opposing the instant Motion, Viera asserts that the issue as to whether Defendants should be granted sovereign immunity is a question for the jury after careful consideration of all the facts and events set forth in the Complaint. (*See* Doc.

---

[1](...continued)
control of animals; (7) Liquor store sales; (8) National Guard activities; (9) Toxoids and vaccines. 42 Pa. Cons. Stat. Ann. § 8522(b). As observed by Defendants, the only potentially relevant exception is medical-professional liability, but because Defendants are corrections employees, not health care employees, the exception does not apply to them. *See McCool v. Department of Corrections*, 984 A.2d 565, 570 (Pa. Cmwlth. 2009) (finding dismissal of complaint against Pennsylvania Department of Corrections employees proper because they are not "health care employees of a Commonwealth agency" as required to fall within the exception set forth in 42 Pa. Cons. Stat. Ann. § 8522(b)(2)).

14

13 at 8.)  We agree that, at this early stage of this case, we cannot find as a matter of law that each of the Defendants was acting within the scope of his or her employment at the time of the events that form the basis for Viera's Complaint.  *See Savage v. Judge*, 2007 WL 29283, at *5 (E.D. Pa. 2007) (finding defendant not entitled to sovereign immunity as to state law assault and battery claims against him at motion to dismiss stage); *Miller v. Hogeland*, 2000 WL 987864, at *3-4 (E.D. Pa. Jul. 18, 2000) (denying motion to dismiss as to state law claim of assault where record unclear as to whether defendant was acting within the scope of employment when he allegedly threw a telephone at plaintiff). *See also Velykis v. Shannon*, Civil No. 1:06-CV-0124, 2006 WL 3098025, at *4 (M.D. Pa. Oct. 30, 2006) (Caldwell, J.) (finding inmate plaintiff had successfully alleged correctional official was not acting within scope of his employment at time of alleged wrongful conduct).  Consequently, we will deny Defendants' Motion with respect to their argument that Defendants are entitled to sovereign immunity as to the state law claims of intentional infliction of emotional distress and negligence asserted against them by Viera.

## V.    CONCLUSION

Based on the foregoing, we shall grant in part the instant Motion to Dismiss in that the claims against Defendants for monetary damages in their official capacities

15

will be dismissed and the claims against Defendant Wenerowicz will be dismissed, and he will be terminated as a party to this action.  However, we shall deny in part the instant Motion in that we decline to dismiss Viera's state law claims for intentional infliction of emotional distress and negligence as barred by sovereign immunity at this stage of the litigation, and thus these claims will proceed along with Viera's claims of deliberate indifference and cruel and unusual punishment asserted against Defendants Long, Bly, Hopkins, and the John and Jane Doe Defendants in their individual capacities.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.  The Motion to Dismiss filed on behalf of Defendants (Doc. 11) is **GRANTED** in part and **DENIED** in part as follows:

    a.  Plaintiff's claims against Defendants for monetary damages in their official capacities are **DISMISSED**;

    b.  Plaintiff's claims against Defendant Wenerowicz are **DISMISSED** with prejudice, and the Clerk of Court shall terminate Wenerowicz as a party to this action;

    c.  The Motion is otherwise **DENIED**.

_____
John E. Jones III
United States District Judge

16